UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **SUPER 8 MOTELS, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:06-cv-00206-MHT** |
| | ) | |
| **JALA INVESTMENTS, INC., et al.** | ) | |
| | ) | |
| **Defendant.** | ) | |

MEMORANDUM OF FACT AND LAW IN SUPPORT OF
SUPER 8 MOTELS, INC.'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Super 8 Motels, Inc. ("SMI") submits this memorandum in support of its motion for summary judgment.

I.    **INTRODUCTION**

This case arises out of a July 12, 2000 franchise agreement (the "Franchise Agreement") between SMI and defendant Himat, Inc. ("Himat") which permitted Himat to operate a Super 8® guest lodging facility in Lanett, Alabama (the "Facility"). Defendants Chandrakant Patel ("C. Patel") and Dhirajlal Patel ("D. Patel") provided SMI with a personal guaranty (the "Guaranty") of Himat's obligations under the Franchise Agreement. On or about February 25, 2004, SMI terminated the Franchise Agreement due to Himat's unauthorized transfer of ownership of the Facility to defendant JALA Investments, Inc. ("JALA").

Himat's breach and the termination of the Franchise Agreement are not susceptible to dispute, and there are no questions of fact concerning the clear and unambiguous contractual obligations under the Franchise Agreement. Further, there can be no dispute that C. Patel and D. Patel guaranteed Himat's contractual obligations under the Franchise Agreement. There also can

be no dispute that C. Patel and D. Patel have failed to perform their obligations under the Guaranty. Further, there is no dispute that JALA has never had a Franchise Agreement with SMI and has, therefore, never been authorized to use SMI's Marks. However, the undisputed evidence establishes that JALA made unauthorized use of SMI's Marks. Accordingly, there is no question of fact concerning Himat's and C. Patel and D. Patel's liability and SMI's right to recover outstanding royalties, fees, and liquidated damages from Himat and C. Patel and D. Patel in accordance with the Franchise Agreement and the Guaranty. Moreover, the undisputed evidence establishes that JALA was unjustly enriched by its unauthorized use of SMI's Marks and such use violated the Lanham Act and SMI is entitled to judgment as a matter of law on its Lanham Act and unjust enrichment claims.

## II.    STANDARD OF REVIEW

A party is entitled to summary judgment when it can show "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Ayres v. Gen. Motors Corp.*, 234 F.3d 514, 520 (11th Cir. 2000) (citing Fed. R. Civ. P. 56(c)); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (existence of factual dispute will not defeat summary judgment; rather, the dispute must be genuine and the fact must be material). A question of fact is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III.    STATEMENT OF FACTS

SMI is a corporation existing under the laws of the State of South Dakota with its principal place of business in Parsippany, New Jersey. (Exhibit 1 - Affidavit of Valerie Capers Workman ("Workman Aff.") at ¶ 3; Doc. # 1 ("Verified Complaint") at ¶ 1.) SMI operates a guest lodging facility franchise system, which is comprised of various trade names and service

marks (which are on the principal register of the United States Patent and Trademark Office), logos and derivations thereof (the "SMI Marks"), as well as the distinctive Super 8® System. (*Id*. at ¶ 4; Verified Complaint at ¶¶ 9-10.)  The hotels operating as part of the franchise system are all independently owned and operated.  (*Id*. at ¶ 5.)  SMI allows its franchisees, pursuant to individual franchise or Franchise agreements, to operate their hotels as Super 8® guest lodging facilities utilizing the Super 8 Marks.  (*Id*. at ¶ 5.)

     A.      <u>The Franchise Agreement and Guaranty</u>

On or about July 12, 2000, SMI and defendant Himat, Inc. entered into a Franchise agreement (the "Franchise Agreement"), which permitted Himat to operate a Super 8® guest lodging facility located at 2314 South broad Avenue, Lanett, Alabama 36863 (the "Facility"). (*Id*. at ¶ 6; Verified Complaint at ¶ 16.)  The Franchise Agreement set forth, among other things, Himat's obligation to make certain recurring payments to SMI, including royalties, marketing fees, service assessments, taxes, interest, reservation system user fees, and annual conference fees (collectively, "Recurring Fees").  (Workman Aff. at ¶ 8, Ex. A at § 7 and Schedule C; Verified Complaint at ¶ 20.)  Pursuant to Section 9 of the Franchise Agreement, Himat could not transfer the Facility, nor engage in any delegation, assignment, conveyance, or pledge of its interest, except with SMI's prior written consent.  (Workman Aff. at ¶ 16, Ex. A at § 9; Verified Complaint at ¶ 21.)  Any attempted transfer, delegation, assignment, conveyance, or pledge not in accordance with Section 9 of the Franchise Agreement would be void as between SMI and Himat and constitute a violation of Section 9.  (*Id*.)  Section 11.2 of the Franchise Agreement provided, *inter alia*, that any violation of Section 9 would terminate the Franchise Agreement. (Workman Aff. at ¶ 9, Ex. A at § 11.2; Verified Complaint at ¶ 22.)   Himat agreed that, in the event of a termination of the Franchise Agreement under Section 11, it would pay liquidated damages to SMI in accordance with a formula specified in the Franchise Agreement.  (*Id*. at ¶ 9,

Ex. A at § 12; Verified Complaint at ¶ 23.)  The Franchise Agreement provides in Section 7 that interest would accrue on all payments that became past due under the Franchise Agreement at the rate of 1.5% per month.  (Workman Aff. at 10, Ex. A at § 7.3).  Himat agreed to "pay all costs and expenses, including reasonable attorneys' fees, incurred by [SMI] to enforce this Agreement or collect amounts owed under this Agreement."  (Workman Aff. at 11, Ex. A at § 17.4).

Effective as of the date of the Franchise Agreement, defendants C. Patel and D. Patel entered into the Guaranty, pursuant to which they guaranteed "that [Himat's] obligations under the [Franchise] Agreement, including any amendments, will be punctually paid and performed." (Workman Aff. at ¶ 12, Ex. B; *see also* Verified Complaint at ¶ 17.)  Pursuant to the terms of the Guaranty, C. Patel and D. Patel agreed, among other things, that upon a default under the Franchise Agreement, they would "immediately make each payment and perform or cause Franchisee to perform, each unpaid or unperformed obligation of Franchisee under the Agreement."  (*Id.*)  Also pursuant to the terms of the Guaranty, C. Patel and D. Patel agreed to pay the costs, including reasonable attorneys' fees, incurred by SMI in enforcing its rights or remedies under the Guaranty or the Franchise Agreement.  (*Id.*)

B.    Termination of the Franchise Agreement

On or about February 25, 2004, through a foreclosure proceeding, Himat transferred ownership of the Facility, without SMI's prior consent and through a serious of transactions following the foreclosure, ownership was ultimately transferred by Special Warranty Deed to JALA on May 4, 2004.  (Workman Aff. at ¶ 15, Ex. B; Verified Complaint at ¶ 17.)  This transfer of ownership violated Section 9 and terminated the Franchise Agreement between Himat and SMI.  (*Id.* at ¶ 16.)

By handwritten note dated February 23, 2004, Himat gave notice of the foreclosure—the unauthorized transfer of ownership of the Facility—thereby terminating the Franchise Agreement upon such foreclosure on or about February 25, 2004.   (Workman Aff. at ¶ 17, Ex. C; Verified Complaint at ¶ 25-28.)   By letters dated September 22, 2004, and December 16, 2004, SMI gave notice to JALA that it did not have a Franchise Agreement with SMI and, therefore, JALA's use of the SMI Marks in and around the Facility to induce the traveling public to rent guest rooms at the Facility infringed upon SMI's rights to its Marks.  (Workman Aff. at 18, Ex. D.)  Despite not having a Franchise Agreement with SMI, JALA continued to use the SMI Marks through at least December 12, 2006, notwithstanding receipt of the above-mentioned notification from SMI to cease and desist the misuse of the SMI Marks.  (Workman Aff. at ¶ 23, Ex. F; Verified Complaint, ¶ 29, Ex. B.)

Despite its obligations, Himat failed to pay any of the liquidated damages or outstanding Recurring Fees owed to SMI.  (Workman Aff. at ¶ 19.)  Despite their obligation under the Guaranty, C. Patel and D. Patel have failed to pay any of the liquidated damages or outstanding Recurring Fees owed to SMI.  (*Id.* at ¶ 20.)  SMI is entitled to payment of Recurring Fees in the principal amount of $5,775.50 that accrued prior to the termination of the Franchise Agreement.  (*Id.* at ¶ 19, Ex. F.)  SMI is entitled to interest on the outstanding Recurring Fees, calculated at the legal rate of interest of 1.5% per month, pursuant to section 7.3 of the Franchise Agreement and the Guaranty, from the date of termination, February 25, 2004, through the date of this Court's ruling on SMI's motion for summary judgment.  (Workman Aff. at ¶ 21.)  Pursuant to Section 12 of the Franchise Agreement, SMI is entitled to $50,000 in liquidated damages that became due as a result of the termination of the Franchise Agreement.  (*Id.* at ¶ 19.)  SMI is entitled to interest on the outstanding liquidated damages, calculated at the legal rate of interest

of 1.5% per month, pursuant to Section 7 of the Franchise Agreement and the Guaranty, from March 26, 2004 (30 days following the date of termination) through the date this Court rules on SMI's motion for summary judgment. (*Id.*)

      C.      <u>The Present Action</u>

SMI's Complaint, filed on March 2, 2006, contains six counts seeking the following relief:  (1) Lanham Act damages due to JALA's infringement of the SMI Marks; (2) an accounting of all revenue derived as a result of operating the Facility through and with the SMI Marks; (3) damages against JALA for its unjust enrichment due to its wrongful use of the SMI Marks; (4) liquidated damages due and owing from Himat; (5) Recurring fees due and owing from Himat; (6) a claim against C. Patel and D. Patel for all damages due and owing under the Franchise Agreement as provided for under the Guaranty.

## IV.    ARGUMENT

      **A.      SMI is Entitled to Summary Judgment as to Liability Because There Is No Genuine Issue of Material Fact Regarding Himat's and C. Patel and D. Patel's Breach of Contractual Obligations.**

Under New Jersey law,[1] if the terms of a contract are unambiguous, a court may construe the meaning or requirements of a contract as a matter of law for purposes of summary judgment. *Kaufman v. Provident Life and Cas. Ins. Co.*, 828 F. Supp. 275, 282-83 (D. N.J. 1992); *accord W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995).  Where the terms of a contract are ambiguous, the interpretation of the parties' intent is a question of fact. *Id*.  The initial determination of whether a contract is clear or ambiguous is a preliminary question of law for the Court. *Id*.

---

    [1]In this action, New Jersey law governs the state law claims asserted by SMI in the Complaint by virtue of the choice of law provision in Section 17.5 of the Franchise Agreement, as adopted in the Guaranty.

In the present case, the express terms of the Franchise Agreement required Himat to pay Recurring Fees to SMI each month, and to operate the Facility pursuant to the terms of the Franchise Agreement. (Workman Aff. at ¶¶ 7-8.) C. Patel and D. Patel guaranteed that Himat would perform these obligations, and they were required to make any and all payments that Himat failed to make. (*Id*. at ¶¶ 12-13.) Himat's obligations under the Franchise Agreement, and C. Patel and D. Patel's obligations under the Guaranty, were unequivocal and precise, and are not subject to any plausible dispute. Given that these contractual provisions are not reasonably susceptible to differing interpretations, there is no ambiguity to be resolved that would preclude summary judgment. *American Cyanamid Co. v. Fermenta Animal Health Co.*, 54 F.3d 177, 181 (3d Cir. 1995).

Moreover, it cannot be disputed that (i) Himat failed to pay Recurring Fees in a timely manner and in the amount required by the Franchise Agreement; (ii) Himat's Franchise Agreement with SMI was terminated in February 2004; (iii) Himat failed to pay liquidated damages in the amount required by the Franchise Agreement; (iv) C. Patel and D. Patel guaranteed Himat's performance under the Franchise Agreement; and (v) C. Patel and D. Patel failed to pay Recurring Fees or liquidated damages owed by Himat. (*See* Workman Aff. at ¶¶ 19-20.) Under the circumstances, SMI has satisfied its burden of demonstrating that there is no genuine issue of material fact with respect to its affirmative contract-based claims.

B.     **SMI Is Entitled to Summary Judgment on Damages**

SMI seeks liquidated damages in the principal amount of $50,000 and outstanding Recurring Fees in the principal amount of $5,775.50, which came due to SMI following the premature termination of the Franchise Agreement. (Workman Aff. at ¶ 19.) SMI also seeks an award of prejudgment interest on the liquidated damages and Recurring Fees consistent with the

terms of the Franchise Agreement, as adopted in the Guaranty, as well as attorneys' fees and costs of suit.  (*Id.* at 21-22.)

   1. <u>SMI is Entitled to Judgment Against Himat and C. Patel and D. Patel on the Recurring Fees Claim.</u>

  In the Franchise Agreement and the Guaranty, Himat and C. Patel and D. Patel agreed to pay Recurring Fees to SMI in accordance with the terms of sections 7 and Schedule C of the Franchise Agreement.  Despite its unambiguous obligation to do so, Himat failed to pay the proper amounts of Recurring Fees.  (*See* Workman Aff. at ¶¶ 19-20.)  In addition, despite their obligation under the Guaranty, C. Patel and D. Patel have failed to pay the Recurring Fees owed. At the time of termination, Himat was in financial default of its obligations to SMI.  (*Id.*)  SMI is therefore entitled to summary judgment awarding Recurring Fees in the principal amount of $5,775.50.  (*See* Workman Aff. at ¶ 21.); *see Fleming Cos. v. Thriftway Medford Lakes, Inc.*, 913 F. Supp. 837 (D.N.J. 1995) (enforcing, by way of summary judgment, unambiguous contract provision).

   2. <u>SMI is Entitled to Judgment Against Himat and C. Patel and D. Patel on the Liquidated Damages Claim.</u>

  New Jersey courts look with favor upon contract provisions fixing a specified amount of damages in the event of a breach.  *D.H.M. Indus., Inc. v. Cent. Port Warehouses, Inc.*, 318 A.2d 20, 22-23, 127 N.J. Super. 499, 503-04 (App. Div. 1973).  The preference of the courts is to construe such provisions as liquidated damages clauses, not penalties.  *Id.*  A liquidated damages clause is valid where such a clause constitutes "a reasonable forecast of just compensation for the harm that is caused by the breach," and where harm "is incapable or very difficult of accurate estimate." *Wasserman's, Inc. v. Township of Middletown,* 645 A.2d 100, 106-07, 137 N.J. 238, 250-51 (N.J. 1994).  Moreover, New Jersey courts have held that liquidated damages clauses between commercial entities, such as the case here, are presumptively valid, and the burden is on

the party opposing enforcement of the clause to demonstrate otherwise. *Id*. at 108, 137 N.J. at 252. Liquidated damages clauses substantially similar to the clause at issue here have been enforced, by way of summary judgment.[2]

The determination as to whether a liquidated damages clause is valid and enforceable is, as with any other type of unambiguous contractual provision, a question of law for the court. *Naporano Assocs., L.P. v. B & P Builders*, 706 A.2d 1123, 1127, 309 N.J. Super. 166, 176 (App. Div. 1998).

The liquidated damages clause in the present case is contained in Section 12.1 of the Franchise Agreement, and reads in relevant part as follows:

> If we terminate the License or this Agreement under Section 11.2, or you terminate the License or this Agreement . . . you will pay us within 30 days following the date of termination, as Liquidated Damages, an amount equal to the sum of accrued Royalties and System Assessment Fees during the immediately preceding 36 full calendar months (or the number of months remaining in the unexpired Term . . . at the date of termination, whichever is less) . . . Liquidated Damages will not be less than the product of $2,000.00 multiplied by the number of guest rooms in the Facility.

(*See* Workman Aff. at ¶ 9, Exhibit A.) This provision demonstrates the parties' clear intent to choose among the available remedies rather than to set an arbitrary number having no bearing on the contractual relationship and illustrates a good faith attempt by the parties to fix adequate compensation for a loss resulting from the premature termination of the Franchise Agreement. It cannot be disputed that actual damages for breach of the Franchise Agreement are impossible or very difficult to estimate. The amount SMI would have earned under the Franchise Agreement, in the absence of Himat's breach, depends upon a percentage of future monthly gross room

---

[2] *See, e.g., Travelodge Hotels, Inc. v. Elkins Motel Associates, Inc.*, No. 03-799, 2005 WL 2656676 (D.N.J. Oct. 18, 2005) (awarding liquidated damages in principal amount of $63,000, as well as prejudgment interest, due to early termination of fifteen-year license agreement).

revenue that Himat would have earned.  Given the nature of the transient lodging business, gross room revenue can fluctuate drastically from month to month depending upon factors such as the national, regional and local economy, the travel patterns of vacationers, the entry or withdrawal of competitors from the market and the effort, skill and resources of the Franchisee.

Based on the foregoing, SMI is entitled to summary judgment in the amount of $50,000 as liquidated damages.

C.    **Prejudgment Interest**

State law governs the availability of prejudgment interest on state law claims. *Mid-Jersey Nat'l Bank v. Fidelity-Mortgage Investors,* 518 F.2d 640, 645 (3d Cir. 1975).  Section 7.3 of the Franchise Agreement provided that interest would accrue at the rate of 1.5% per month on all payments that became past due.  (Workman Aff. at ¶ 21.)  Himat was obligated to pay the Recurring Fees under the Franchise Agreement (*Id*. at 8.)   The Guaranty required C. Patel and D. Patel to perform each unpaid obligation of Himat.  The Recurring Fees remain owing.

In accordance with the Franchise Agreement and Guaranty, SMI is entitled to prejudgment interest at the rate of 1.5% per month (or 18% per year) on liquidated damages in the amount of $50,000 from March 26, 2004 (30 days following the date of termination) through and including the date the Court rules on SMI's motion for summary judgment, and on Recurring Fees in the amount of $5,775.50 from February 24, 2004  (the date of termination) through and including the date of this Court's ruling on SMI's motion for summary judgment. (Workman Aff. at ¶ 21.)  Accordingly, SMI is entitled to contractual prejudgment interest.  *See Utica Mut. Ins. Co. v. Di Donato*, 453 A.2d 559, 566, 187 N.J. Super. 30, 43 (App. Div. 1982) (prejudgment interest can be provided for in the contract).

D.    **Attorneys' Fees and Costs**

Under New Jersey law, in a breach of contract action, legal expenses can be recovered if the contract between the parties so provides. *Papalexiou v. Tower West Condo.,* 401 A.2d 280, 287, 167 N.J. Super. 516, 530 (Ch. Div. 1979). Moreover, with respect to a fees and costs provision, New Jersey "does not have a public policy which would prevail over the enforcement of an express contract between private parties." *Id.,* 167 N.J. Super. at 531.

C. Patel and D. Patel expressly agreed in the Guaranty to adopt Section 17.4 of the Franchise Agreement, which required Himat to "pay all costs and expenses, including reasonable attorneys' fees, incurred by [SMI] to enforce this Agreement or collect amounts owed under this Agreement." (Workman Aff. at ¶ 11-14, Ex. A.) Accordingly, SMI is entitled to its reasonable attorneys' fees and all costs incurred in connection with this action. Should this Court grant SMI's motion for summary judgment, SMI shall submit an affidavit detailing its attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54 and Local Civil Rule 54.1.

E.    **SMI is Entitled to Judgment Against JALA For Violation of the Lanham Act.**

JALA intentionally used the SMI Marks without authorization as it did not have a Franchise Agreement with SMI allowing such use. As a result, SMI is entitled to judgment as a matter of law on its claim that JALA violated the Lanham Act, the federal law that prohibits the unauthorized use of registered marks and the intentional passing off of services in an attempt to deceive the public. JALA's unauthorized use of the SMI Marks violated Sections 43(c), 32 and 43(a) of the Lanham Act.

Section 43(c) of the Lanham Act prohibits a person from using another person's famous mark in commerce so as to cause dilution of the distinctive quality of the mark. 15 U.S.C. § 1125(c)(1). In order to recover for trademark dilution, SMI must prove that (1) the marks at

issue are distinctive and famous; and (2) the defendant's "use of the same or a similar mark creates a likelihood of dilution through tarnishment or blurring." *Sigma Chi Fraternity v. Sethscot Collection*, No. 98-2102, 2000 LEXIS 6332, at * 32 (S.D. Fla. April 7, 2000) (*citing American Exp. Co. v. CFK, Inc.*, 947 F. Supp. 310, 314 (E.D. Mich. 1996)).  To establish a violation of section 32 of the Act, SMI must demonstrate:  "(1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion." *Frehling Enterprises, Inc. v. Int'l Select Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999).

Section 43(a) prohibits a false designation of the origin of goods or services, regardless of whether the misrepresentation involves registered marks.  To establish a Section 43(a) violation, SMI must show that JALA's use of the SMI Marks was likely to cause confusion, or to deceive consumers as to the affiliation or connection between the Facility and SMI.  15 U.S.C. §•1125(a).

SMI can establish, as a matter of law, that JALA violated Sections 43(c), 32, and 43(a) of the Lanham Act.

      1.      <u>JALA Violated Section 43(c) of the Lanham Act.</u>

SMI is entitled to judgment on its Section 43(c) claim because JALA's association of the SMI Marks with the Facility tarnished the goodwill and business reputation associated with the SMI Marks.  Acts constituting false designation of origin under Section 43(a) can also result in liability for dilution under Section 43(c), but "[t]rademark disparagement, unlike infringement, does not require a showing of consumer confusion." *WHS Entertainment Ventures v. United Paperworkers Intern. Union*, 997 F. Supp. 946, 953 (M.D. Tenn. 1998); *Tally-Ho, Inc. v. Coast Community College Dist.*, 889 F.2d 1018, 1024 (11th Cir. 1989) ("dilution analysis is fundamentally different from infringement analysis; the former focuses on the dilution of a mark's distinctive quality while the latter focuses on the likelihood of consumer confusion").  It

is directed at "protecting famous trademarks from subsequent uses that blur the distinctiveness of the mark or tarnish or disparage it, even in the absence of likelihood of confusion." *Id.*

In order to prove a claim for dilution, a plaintiff need only demonstrate that (1) its marks are distinctive and famous; (2) that defendant adopted its mark after plaintiff's mark became famous; and (3) the defendant's use of the same or a similar mark caused dilution. *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 670 (5th Cir. 2000); *see also* 15 U.S.C. § 1127 (defining dilution as the lessening of the capacity of a famous mark to identify and distinguish goods and services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties, or (2) likelihood of confusion . . . ."). Dilution can be achieved through tarnishment or blurring. *Id.* at n.12.

In *Mosely v. V Secret Catalogue, Inc.*, 537 U.S. 418, 123 S. Ct. 1115 (2003), the United States Supreme Court held that a showing under § 43(c) "requires a showing of actual dilution, rather than a likelihood of dilution." *Id.* at 433, 123 S. Ct. at 1124. However, the Court recognized "that direct evidence of dilution, such as consumer surveys will not be necessary if actual dilution can reliably be proven through circumstantial evidence -- the obvious case is one where the junior and senior marks are identical." *Id.* at 434, 123 S. Ct. at 1125.

Pursuant to the Lanham Act, a court may consider several, nonexclusive, factors to determine whether the plaintiff's mark is famous or distinctive:  1) distinctiveness;  2) duration and extent of use;  3) the duration and extent of advertising;  4) geographical extent;  5) channels of trade;  6) the degree of recognition of mark;  7) the nature and extent of the use of the same or similar marks by third parties;  and 8) whether the mark is registered.  15 U.S.C. § 1125(c)(1). Given these factors, the SMI Marks are plainly distinctive and famous.  (*See* Workman Aff. at ¶¶ 4-5); *see also Nike, Inc. v. Variety Wholesalers, Inc.*, 274 F. Supp. 2d 1352, 1372 (S.D. Ga.

2003) (holding that the Nike trademarks are clearly famous marks given "the inherent distinctiveness of the marks; . . . the length of use of the marks[;] . . . the extensive advertising on a worldwide basis; . . . . the lack of evidence of any third party use; and . . . the existence of federal trademark registrations for the marks")).

There can be no question that JALA's continued use of marks identical to the SMI Marks to the same consumers that SMI Franchisees target, created dilution of the SMI Marks. *See Mosely*, 537 U.S. at 434, 123 S. Ct. at 1125. Moreover, because Himat's Franchise Agreement with SMI had been terminated, and JALA had no Franchise Agreement with SMI, SMI could no longer conduct the periodic quality assurance inspections that are mandatory for Franchisees in the SMI System. Thus, there was no monitoring regime in place to ensure that the Facility was in compliance with SMI's quality requirements. Although JALA was specifically directed to cease using the SMI Marks in September and December 2004, JALA continued to hold this Facility out to the public as a Super 8 Motel until at least December 12, 2005. SMI is entitled to judgment as a matter of law on the Lanham Act Section 43(c) claim.

## 2.    JALA Violated Section 32 of the Lanham Act.

There is no dispute that SMI has the exclusive right to sublicense the use of the SMI Marks and that they are valid and legally protectable. The SMI Marks have been registered on the principal register of the United States Patent and Trademark Office. (Workman Aff. at ¶ 5; Verified Complaint at ¶¶ 9-13.) Such registration is *prima facie* evidence that SMI has an exclusive right to subFranchise the SMI Marks. *See* 15 U.S.C. •1115(a); *American Heritage Life Ins. Co. v. Heritage Life Ins. Co.*, 494 F.2d 3, 10 (5th Cir. 1974).

Therefore, to prove its claim of service mark infringement, SMI must show that JALA's use of the SMI Marks was likely to create confusion in the minds of potential customers as to the source, affiliation or sponsor of JALA's product. *See Frehling Enterprise, Inc. v. Int'l Select*

*Group, Inc.*, 192 F.3d 1330, 1335 (11th Cir. 1999) ("to prevail [on a trademark infringement claim under 15 U.S.C. § 1114(1)] a plaintiff must demonstrate (1) that its mark has priority and (2) that the defendant's mark is likely to cause consumer confusion."). The question of "likelihood of confusion" is decided by considering the following factors: (1) strength of the Super 8® Marks; (2) relatedness of the goods or services; (3) similarity of the marks; (4) similarity of parties' trade channels; (5) marketing channels used; (6) evidence of actual confusion; and (7) JALA's intent in selecting the mark. *See id.* at 1342. Despite the fact that SMI need not support its claim by a majority of factors, all seven factors weigh in favor of granting summary judgment. *See id.*

The first factor in determining whether there is a likelihood of confusion is the strength of the SMI Marks. The SMI Marks are among the most famous and identifiable marks in the United States. (Verified Complaint at ¶¶ 8-15.) The SMI Marks are very strong. "The stronger the mark, the greater the scope of protection accorded it[.]" *Id.* "Suggestive terms suggest characteristics of the goods and services and require an effort of the imagination by the consumer in order to be understood as descriptive." *Id.* (quotation omitted). "For instance, 'penguin' would be suggestive of refrigerators." *Id.* Super 8 is a suggestive term. A suggestive term is considered stronger than one that is merely descriptive, and does not require proof of a secondary meaning. *See University of Georgia Athletic Ass'n v. Laite*, 756 F.2d 1535, 1541 (11th Cir. 1985) ("proof of secondary meaning is required in an action under section 43(a) *only* when protection is sought for a descriptive mark, as opposed to an arbitrary or suggestive mark."). Accordingly, the SMI marks are strong, and this factor supports a finding that there is a likelihood of confusion.

The second factor is the relatedness of the goods or services. SMI's Franchisees provide hotel accommodations to the public using the SMI Marks. JALA provides identical services in the very same location as a former Franchisee. This supports a conclusion that there is a likelihood of confusion. *See Frehling*, 192 F.3d at 1339. The third factor is the similarity between the SMI Marks and the mark used by JALA. Photographs show JALA's marks on signs located at the Facility are identical to the SMI Marks. (Workman Aff. at ¶ 23, Ex. F.) The fourth factor "takes into consideration where, how, and to whom the parties' products are sold." *Frehling*, 192 F.3d at 1339. JALA provided the same service in the same location, targeting the same consumers as SMI's previous franchisee, Himat. Under these circumstances, the similarity between the marks and the direct association with SMI and the similarity of the trade channels clearly establishes there was a likelihood of confusion.

The fifth factor is the marketing channels used. SMI does not know all methods of advertisement or marketing used by JALA. However, the advertising or marketing methods known by SMI are identical to methods used by JALA. In particular, JALA advertised or marketed with signs on the premises using the SMI Marks. (*See* Workman Aff. at ¶ 23, Ex. F.) This is the same advertising method, in the exact same market, used by Himat when Himat was a SMI Franchisee as well as those used by properly franchised SMI Franchisees. Accordingly, this factor also supports a conclusion that there is a likelihood of confusion.

The sixth factor is evidence of actual confusion. Evidence of actual confusion is only one of several factors to consider, but such evidence is usually difficult to produce. *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985) ("The law is well settled in this circuit that evidence of *actual* confusion between trademarks is not necessary to a finding of a *likelihood* of confusion, although it is the best such evidence.") In the present case,

evidence of actual confusion would be extremely difficult to obtain given the transient nature of the customers of the Facility. However, SMI asserts that JALA's actions must have been confusing to the public by associating the Facility with SMI. It is a logical assumption that potential patrons at the Facility might be influenced by the fact that the Facility is represented as a Super 8 guest lodging facility. This confusion likely leads customers to stay at the Facility based on the fact that the consumer believed it to be a Super 8 guest lodging facility. Thus, this factor logically supports the conclusion that there is evidence of confusion.

The seventh factor is JALA's intent in selecting the mark. JALA intended to confuse the public by using the SMI Marks to associate the Facility with SMI. JALA maintained SMI signage at the Facility that advertised the Facility as a Super 8 Motel. The only possible reason to keep these advertisements is to lure patrons to the Facility based on SMI's name recognition and goodwill. Even if JALA contends it had no conscious intent, this is insufficient. Intentional blindness can be evidence of improper intent. *Frehling*, 192 F.3d at 1340. JALA's use of the SMI marks was a blatant attempt to confuse the public as to the affiliation of the Facility. Therefore, this factor also supports the conclusion that there is a likelihood of confusion.

All seven of the factors support the conclusion that there is a likelihood of confusion between the Facility and SMI. Accordingly, as a matter of law, JALA's unauthorized use of the SMI Marks was likely to create confusion in the minds of potential customers as to the affiliation of the Facility. As a result, SMI is entitled to summary judgment on its Section 32 claim.

3.    JALA Violated Section 43(a) of the Lanham Act.

As in an action alleging infringement of a mark under Section 32, "[t]he essential element of an action under § 43(a) is proof by the plaintiff that the alleged infringement by the defendant creates a likelihood of confusion." *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 831 (11th Cir. 1982). SMI has established, as a matter of law, that JALA's concurrent

use of the SMI Marks was likely to cause confusion among the traveling and lodging public. There can be no dispute that JALA deceived customers into believing that the Facility was affiliated with SMI by failing to remove items such as the primary signage at the Facility bearing the SMI Marks. *See S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375 (3d Cir. 1992) (concurrent use of the same trademark is "highly likely to cause consumer confusion about [the defendant's] affiliation with the franchise"); *Opticians Ass'n of America v. Independent Opticians of America*, 920 F.2d 187, 195 (3d Cir. 1990) ("likelihood of confusion is inevitable when . . . the identical mark is used concurrently by unrelated entities").

> Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks . . . . Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated. Any shortcomings of the franchise therefore will be attributed to [the franchisor].

*Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir. 1983).

Here, there is a substantial likelihood that JALA's use of the SMI Marks to promote patronage at the Facility caused confusion among the traveling and lodging public—the principal element of a trademark infringement claim under the Lanham Act. There can be no dispute that JALA was deceiving customers into believing that the Facility was affiliated with SMI. JALA's continued use of the SMI Marks following termination clearly establishes a violation of Section 43(a) of the Lanham Act. Accordingly, SMI is entitled to judgment as a matter of law on its Lanham Act claims.

F.      **SMI is Entitled to Summary Judgment Against JALA on the Unjust Enrichment Claim**

A claim for unjust enrichment, "requires proof that defendant received a benefit and that retention of that benefit without payment would be unjust." *County of Essex v. First Union Nat'l Bank*, 862 A.2d 1168, 1172, 373 N.J. Super 543, 549 (App. Div. 2004) (quotation omitted), *aff'd*

*in relevant part*, 891 A.2d 600, 186 N.J. 46 (N.J. 2006).   "[U]njust enrichment is when a plaintiff has not been paid despite having had a reasonable expectation of payment for services performed or a benefit conferred." *Id.*, 373 N.J. Super at 550.

There can be no dispute that JALA used the SMI Marks despite having no franchise agreement permitting such use. (*See* Workman Aff. at ¶ 23, *see also* Ex. D at p. 9,  Request No. 4, Requests for Admission to JALA.)[3]  Moreover, there can be no dispute that JALA used the SMI Marks to market the Facility as a guest lodging facility without a franchise agreement permitting JALA to make such use.  (*Id.*; *see also* Ex. H at p. 9, Request No. 1, Requests for Admission to JALA.)  Further, JALA has admitted that paying guests stayed in the Facility after it obtained ownership on May 4, 2004 until at least December 12, 2005 when it was making unauthorized use of SMI's Marks.  (Ex. H at p. 9, Request No. 2, 3 Requests for Admission to JALA.)  Accordingly, JALA received the benefit of using SMI's Marks to attract the traveling public to stay in the Facility.  JALA's retention of this benefit would surely be unjust.  SMI has a reasonable expectation in obtaining payment for the use of its Marks.  Therefore, SMI is entitled to judgment ordering that JALA account to SMI for any and all revenue derived as a result of marketing, promoting, and/or selling guest lodging services at the Facility through and with the SMI Marks and ordering JALA to pay all Recurring Fees, profits and royalties to which SMI is entitled and which would have been required had JALA's use of the SMI Marks been proper and pursuant to a franchise agreement.

## V.    CONCLUSION

For the foregoing reasons, SMI's motion for summary judgment is due to be granted.

---

[3] SMI served Requests for Admission to JALA on September 15, 2006.  SMI did not receive responses to the Request for Admission.  Pursuant to Federal Rule of Civil Procedure 36, the requests are deemed admitted.

Respectfully submitted this 6th day of November, 2006.


s/Robin G. Laurie
One of the Attorneys for Plaintiff
Super 8 Motels, Inc.

OF COUNSEL:
Robin G. Laurie (LAU006)
rlaurie@balch.com
Kelly F. Pate (FIT014)
kpate@balch.com
Balch & Bingham LLP
P. O. Box 78
Montgomery, Alabama 36101
(334) 834-6500
(334) 269-3115 fax

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing and/or that a copy of the foregoing has been served upon the following by United States Post Office depository on the 6th day of November, 2006.

John A. Christy, Esq.
Schreeder, Wheeler & Fling, LLP
1600 Candler Building
127 Peachtree Street, N.E.
Atlanta, Georgia 30303


Shannon L. Holliday, Esq.
Copeland Franco Screws & Gill, P.A.
444 South Perry Street
Montgomery, Alabama 36104


Perry G. Jackson, Esq.
Roberts & Fish P.C.
Lakeshore Park Plaza
2204 Lakeshore Drive, Suite 205
Birmingham, AL 35209


       /sRobin G. Laurie              
            Of Counsel